**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-25618-BLOOM/Elfenbein**

MOHAMMAD ABDELRAHMAN SAMHAN,

      Petitioner,

v.

KRISTI NOEM, *Secretary of the U.S. Department of*
*Homeland Security, in her official capacity*;
TODD LYONS, *Acting Director and Senior Official*
*Performing the Duties of the Director of ICE, in his*
*official capacity*; GARRETT RIPA, *Field Office*
*Director for ICE ERO Miami, in his official*
*capacity*; WARDEN OF KROME SPC, *in his/her official*
*capacity*, U.S. DEPARTMENT OF HOMELAND
SECURITY; and U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,

      Respondents.
_____/

**<u>OMNIBUS ORDER</u>**

**THIS CAUSE** is before the Court upon Petitioner Mohammad Abdelrahman Samhan's

("Petitioner") Verified Petition for Writ of Habeas Corpus and Complaint for Injunctive Relief

("Petition") under 28 U.S.C. § 2241. ECF No. [1]. On December 3, 2025, the Court issued an

Order to Show Cause requiring Respondents to show cause why the Petition should not be granted.

ECF No. [5]. Respondents filed a Response, ECF No. [8], to which Petitioner filed his Reply, ECF

No. [9]. On February 10, 2026, Petitioner filed an Emergency Motion for Temporary Restraining

Order to Enjoin Unlawful Removal and Order Immediate Release ("Emergency Motion"). ECF

No. [13]. Respondents filed a Response, ECF No. [15], to which Petitioner filed a Reply, ECF No.

[16]. The Court held a hearing on April 2, 2026, related to the circumstances of Petitioner's

informal interview and case law that would inform the Court's decision as to whether Respondents complied with the governing law. The Court has reviewed the Petition, the Emergency Motion, the corresponding briefing, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Petition is granted. The Emergency Motion is denied as moot.

## I.       BACKGROUND

Petitioner is a stateless Palestinian[1] who has lived in the United States since 1986. ECF No. [1] ¶ 16. Petitioner became a lawful permanent resident in 1991. ECF No. [8-1] at 58. Following Petitioner's criminal convictions, Respondents determined Petitioner was removable and issued a final order of removal on December 12, 2005. *See* ECF Nos. [1] ¶¶ 20-21; [8-1] at 58. Petitioner had been released on an Order of Supervision ("OSUP") since April 10, 2006. ECF Nos. [1] ¶ 20; [8] at 3. On November 20, 2025, during a scheduled check-in with Immigration and Customs Enforcement ("ICE"), Respondents revoked Petitioner's OSUP and detained him. ECF Nos. [1] ¶ 3; [8] at 4. Petitioner has been detained at Krome North Service Center awaiting removal since November 20, 2025. ECF Nos. [1] ¶ 3; [8] at 4.

Petitioner states that when he was detained at his ICE check-in, he was served with a Notice of Revocation of Release ("Notice") but believes that the case was not referred to the ICE Executive Associate Director and no findings were made that revocation of the OSUP was in the public interest. ECF No. [1] ¶ 27. Petitioner further states that "at no time following Petitioner's arrest did ICE explain why it revoked Petitioner's order of supervision or give him an opportunity

---

[1] The parties dispute Petitioner's nationality. Respondents note Petitioner was born in Jordan, and immigration documents list "Jordan" as Petitioner's country of citizenship. *See e.g.*, ECF No. [8-1] at 7. However, Petitioner asserts that he is a stateless Palestinian and any notation that he was born in Jordan is the result of shifting territorial borders. ECF No. [16] ¶ 2. He asserts he has never been a citizen of Jordan, and Jordan, the Palestine Liberation Organization (PLO), and Israel have denied his applications for travel documents. *See* ECF No. [1-10]; *see also* ECF Nos. [13-3]; [13-4].

to respond to those reasons." ECF No. [1] ¶¶ 26, 29. Petitioner challenges his detention under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Immigration and Nationality Act and implementing regulations, the Administrative Procedure Act, and the *Accardi* doctrine. ECF No. [1] ¶ 4.

In their Response, Respondents challenge the Court's jurisdiction under 8 U.S.C. § 1252(g) to review the decision to execute removal orders. ECF No. [8] at 6. Notwithstanding their jurisdictional argument, Respondents argue that the OSUP was properly revoked, and Petitioner's detention is proper under 8 U.S.C. § 1231(a). *Id.* at 6-7. Respondents assert that, pursuant to 8 C.F.R. § 241.1(*l*)(2), the OSUP was revoked to enforce a removal order. *Id.* Respondents contend that Petitioner received notice, an opportunity to respond, and that the OSUP was revoked by an officer with properly delegated authority. *See id.* at 7-8; ECF No. [8-2]. [2] When ordered to explain the discrepancy between the procedures stated in the Notice and the process afforded Petitioner, Respondents contend that the Notice is not a regulation and reiterate they followed binding regulations when detaining Petitioner on November 20, 2025. *See* ECF No. [11].

**A. Emergency Motion**

On February 10, 2026, Petitioner filed his Emergency Motion and requests that the Respondents be enjoined from removing Petitioner to any third country until Respondents fully comply with all statutory and regulatory protocols governing removal under 8 U.S.C. § 1231(b)(2) and seeks immediate release. *Id.* at 8.

Petitioner argues he "faces an imminent risk of removal to a third country without

---

[2] Respondents also argue that the Petition should be dismissed as an impermissible shotgun pleading. ECF No. [8] at 4-6. The Court declines to dismiss the Petition on shotgun pleading grounds because, despite any alleged pleading deficiencies, the Petition provides adequate notice to Respondents and for the Court to consider Petitioner's claims. *See Thomas v. Tyco Int'l Mgmt Co., LLC*, 262 F. Supp. 3d 1328, 1340-41 (S.D. Fla. 2017).

compliance with governing statutes and regulations." ECF No. [13]. Petitioner cites recent news reports that ICE chartered private flights to remove "similarly situated stateless Palestinians[,]" and argues that he "faces a concrete, imminent risk of unlawful removal." ECF No. [13] at 2.

Upon receipt of the Emergency Motion, the Court issued an Order to Show Cause that set a briefing schedule and ordered that Respondents "shall not remove Petitioner from the United States or the Southern District of Florida until further order of the Court" in order to preserve the Court's jurisdiction. ECF No. [14]. Respondents argue that Petitioner has not made a proper showing to justify entry of a Temporary Restraining Order as Petitioner merely argues there is a "*risk* that Respondents *will attempt* to remove Petitioner without compliance with the required procedures." ECF No. [15] at 2. Respondents advise they are "not aware of any current plan to remove Petitioner to a third country[,]" and "Respondents will provide Petitioner notice and opportunity before removing Petitioner to a third country." *Id.*

Petitioner replies that, although the February 10, 2025 Order to Show Cause ordered Petitioner not to be transferred outside the Southern District of Florida while the Petition is pending, Petitioner "continues to suffer irreparable harm through his ongoing, unlawful physical incarceration." ECF No. [16] at 1. Because the Emergency Motion seeks Petitioner's release on the basis of unlawful detention, the remaining request in the Emergency Motion coincides with the merits of the habeas petition, which the Court addresses below.

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, before the Court can consider the merits of the Petition, it must first determine whether Congress or the Constitution permits the Court to

exercise habeas jurisdiction under the circumstances. *See Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *4 (S.D. Fla. Aug. 8, 2025) ("'Federal courts are courts of limited jurisdiction.'. . . Accordingly, before the Court can proceed, it must determine whether it has jurisdiction over the action.") (quoting *Kokkonen*, 511 U.S. at 377; citing *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) ("Prior to making an adjudication on the merits, we must assure ourselves that we have jurisdiction to hear the case before us.")).

Title 28 U.S.C. § 2241, the federal habeas statute, provides federal courts with the authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." 18 U.S.C. § 2241(c)(3); *see Buriev v. Warden, GEO, Broward Transitional Ctr.*, No. 25-CV-60459, 2025 WL 2763202, at *2 (S.D. Fla. Sept. 26, 2025). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, "Section 2241 is [still generally] the proper vehicle through which to challenge the constitutionality of a non-citizen's detention without bail." *Oscar v. Ripe*, 751 F. Supp. 3d 1324, 1329 (S.D. Fla. 2024) (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)); *Buriev*, 2025 WL 2763202, at *2 (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)); *see also Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025) ("Section 2241 authorizes federal courts to hear challenges to immigration detention.").

While federal district courts still generally retain jurisdiction to review immigration detention claims, in enacting 8 U.S.C. § 1252, Congress has stripped district courts of the ability to review factual or legal issues concerning certain discretionary decisions related to immigration removal proceedings. Specifically, § 1252 strips federal district courts of

jurisdiction where the petitioner's claims challenge or arise from (1) the commencement of removal proceedings, (2) the adjudication of cases, and (3) the execution of final removal orders. *Barrios*, 2025 WL 2280485, at *4 (citing 8 U.S.C. § 1252(g)).

### III.   DISCUSSION

#### A.   Jurisdiction

Petitioner challenges his detention following the revocation of his OSUP and argues the revocation violates substantive and procedural due process (Counts I-II), the Administrative Procedure Act (Counts III-V), the *Accardi* doctrine, (Count VII), and is impermissible as an *ultra vires* act (Count VI). ECF No. [1]. Respondents argue that, under 8 U.S.C. § 1252(g), the Court lacks jurisdiction over any claim that challenges the "decision or action . . . to . . . execute removal orders[.]" ECF No. [8] at 6. Respondents assert Petitioner is detained "to affect his removal from the United States," which is expressly permitted under 8 U.S.C. § 1231(a). *Id.* Despite Respondents' jurisdictional challenge, they concede that "Petitioner does not appear to be challenging the basis of his detention *per se*; rather Petitioner brings various claims challenging the propriety of the revocation of his OSUP." ECF No. [8] at 7. Indeed, Petitioner acknowledges his detention is a result of the revocation of his OSUP but challenges his detention because "ICE detained him without notice or opportunity to be heard, on the decision of an individual without authority to do so, without findings required by law, and in violation of agency rules." ECF No. [1] ¶ 1.

While § 1252(g) "bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal basis for those discretionary decisions and actions." *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006). "The Eleventh Circuit has consistently held that even where the statutory framework grants agency discretion, courts have jurisdiction to review whether an agency adhered to its own

regulations and procedures." *Barrios*, 2025 WL 2280485, at *5 (citing *Kurapati v. U.S. Bureau of Citizenship and Immig. Services*, 775 F.3d 1255, 1262 (11th Cir. 2014)) (finding that § 1252(a)(2)(B)(ii) did not prevent the Court from assessing whether the government followed its procedures when it revoked petitioner's visa petition).

Petitioner does not challenge the underlying removal order. *See generally* ECF No. [1]. Petitioner also does not challenge that Respondents may revoke an order of supervision. *Id.* Rather, Petitioner challenges Respondents' compliance with permissible bases to revoke an OSUP and proper OSUP revocation procedures. Therefore, jurisdiction is proper. *See Ceesay v. Kurzdorfer*, No. 25-CV-267-LJV, 2025 WL 1284720, *8 (W.D.N.Y. May 2, 2025) (holding that "district courts . . . have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not."); *Grigorian*, 2025 WL 2604573, at *3-4 (holding that § 1252(g) did not strip the court of jurisdiction to evaluate whether the government complied with OSUP revocation procedures). Moreover, Petitioner's challenge to his detention under § 1231(a)(6) does not seek review of the Attorney General's exercise of discretion to detain him but instead challenges the extent of the Attorney General's authority under the post-removal detention statute. As such, jurisdiction is proper. *See Zadvydas*, 533 U.S. at 688 (holding federal courts have jurisdiction to adjudicate statutory and constitutional challenges to post-removal-period detention).

### B. Basis of Revocation of the OSUP and Detention under 8 U.S.C. § 1231(a)(6)

Petitioner argues his substantive Due Process rights under the Fifth Amendment were violated because Respondents had "no legitimate, non-punitive objective in revoking Petitioner's order of supervision." ECF No. [1] ¶ 51. Petitioner contends revocation of the OSUP and Petitioner's detention is improper where Respondents did not find that Petitioner is a danger to the

community or a flight risk. *Id.* ¶ 48-51. Respondents assert that revoking the OSUP was proper because an official determined that revocation was "appropriate to enforce a removal order," as authorized under 8 C.F.R. § 241.1(*l*)(2)(iii). *See* ECF No. [8] at 6-7.

The Court agrees with Respondents. Revocation of the OSUP in this case is governed by § 241.4(*l*)(2), which expressly authorizes revocation "to enforce a removal order." *See* 8 C.F.R. § 241.4(*l*)(2)(iii). Petitioner has not cited any controlling authority requiring specific findings of flight risk or danger to the community when revoking an OSUP to enforce a removal order under § 241.4(*l*)(2).[3] Therefore, Petitioner has failed to establish that revocation of the OSUP was not authorized by law. Moreover, by the language of the regulation, the decision to revoke an OSUP to enforce a removal order is an exercise of discretion of the revoking official and falls outside this Court's limited jurisdiction under § 1252(g). *See Barrios*, 2025 WL 2280485, at *4. The Court retains jurisdiction to ensure Respondents complied with their revocation procedures, which is discussed below. *Id.* at *5.[4]

Petitioner further challenges the basis for his detention under 8 U.S.C. § 1231(a)(6) and *Zadvydas*. Petitioner argues that, where 8 U.S.C. § 1231(a)(6) authorizes detention, detention is unreasonable if removal is not reasonably foreseeable. *See* ECF No. [1] ¶ 81 (citing *Zadvydas v. Davis*, 533 U.S. 689 (2001)). Petitioner argues he is improperly detained because he cannot be removed "in the reasonably foreseeable future" as he is a stateless Palestinian with no travel

---

[3] To support his argument, Petitioner cites to one case that discusses, in dicta, an apparent inconsistency between the plain language of detention authorized under 8 U.S.C. § 1231 and revocation of release under 8 C.F.R. § 241.4. *See You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 463 (S.D.N.Y. 2018). This Court declines to make such a finding.

[4] Petitioner challenges the basis of revocation because he argues the OSUP was revoked by an official without proper authority. *See* ECF No. [1] ¶¶ 61-62. Respondents contend that revocation authority was properly delegated. *See* ECF No. [8-2]. In response, Petitioner argues that certain findings are required for revocation by a delegated official. *See* ECF No. [9] at 5-6. While the Court has jurisdiction to review whether Respondents followed their revocation procedures including the proper delegation of authority, the Court does not address this argument because the Petition is granted on other grounds explained below.

documentation. *See* ECF Nos. [1] ¶ 36; [12] at 3-4. To effectuate Petitioner's removal, Respondents requested a travel document from Jordan on January 15, 2026. ECF No. [15-1] ¶ 7. Respondents indicate the request is still pending. *Id.*

The Court finds Petitioner's *Zadvydas* claim to be premature. *Zadvydas* "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. "[T]o state a claim under *Zadvydas*, [petitioner] not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Here, Petitioner has been detained since November 20, 2025, a period less than the "presumptively reasonable" six-month period established by the Supreme Court. *Zadvydas*, 533 U.S. at 701. Because Petitioner has not been detained longer than six months, the Court need not address Petitioner's and Respondents' arguments whether there is a "significant likelihood of removal in the reasonably foreseeable future."

**C. Informal Interview Requirement in OSUP Revocation Procedures**

Petitioner argues that Respondents violated established regulations and his procedural Due Process rights when they revoked his OSUP without providing him with an informal interview. ECF No. [1] at 11-16. Respondents argue that Petitioner's OSUP was revoked pursuant to 8 C.F.R. § 241.4(*l*)(2), which does not require an informal interview. ECF No. [8] at 8. Notwithstanding their argument that no informal interview was required, Respondents maintain that the procedures outlined in their Response satisfies the informal interview requirements of § 241.4(*l*)(1). ECF No. [11].

The parties agree that on November 20, 2025, Petitioner was detained at his scheduled ICE

check-in. ECF Nos. [1] ¶ 25-29; [8-1] at 4-5. There, an ICE officer served Petitioner a Notice of Revocation of Release ("Notice"), which states:

> You will promptly be afforded an informal interview at which you will be given the opportunity to respond to the reasons for the revocation and to provide evidence to demonstrate that your removal is unlikely. If you are not released following the informal interview, you will receive notification of a new review, which will occur within approximately three months from the date of this notice.

ECF No. [8-1] at 72-73. Respondents contend Petitioner was "informed that his OSUP was revoked to affect his removal from the United States, and he was provided the opportunity to ask questions regarding the revocation of release. Petitioner did not ask any questions at that time." *Id.* at 4-5.

Petitioner argues, and the Respondents acknowledge, that the "opportunity to ask questions" is not an informal interview. ECF No. [12] at 2. Moreover, this "opportunity" occurred at the time of his arrest, and "[t]he right to 'ask questions' regarding an arrest is fundamentally different from a due process right to 'provide evidence' that removal is unlikely." *Id.* Petitioner also argues that procedures given at the time of detention cannot satisfy the informal interview requirement because the regulation establishes "a *future* evidentiary opportunity contained in the document being served." *Id.* at 2-3.

Section 241.4(*l*)(1) establishes the procedure for revoking release when the conditions of release have been violated:

> (*l*) Revocation of release—
> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the

> alien an opportunity to respond to the reasons for revocation stated in the
> notification.

8 C.F.R. § 241.4(*l*)(1).

Here, because Petitioner did not violate any conditions of release, Petitioner's OSUP was revoked under § 241.4(*l*)(2), not § 241.1(*l*)(1). *See* ECF No. [11]. Although § 241.4(*l*)(2) does not expressly provide for an informal interview, the notice and opportunity to respond requirements apply to both sections and apply regardless of the reason for revocation. *Grigorian*, 2025 WL 2604573, at *6; *see also Ceesay*, 781 F. Supp. 3d at 163 (collecting cases). As such, Respondents' argument that, despite the language of the Notice of Revocation, no informal interview was required to revoke Petitioner's OSUP is without merit.

Moreover, the Court disagrees that the interaction between the ICE official and Petitioner on November 20, 2025, satisfies the informal interview requirement. Temporally, providing Petitioner an "opportunity to ask questions" in the same interaction where he is served a Notice of Revocation and detained cannot fulfill the informal interview requirement where the petitioner "will be afforded an initial informal interview promptly *after* his or her return to Service custody." *See* 8 C.F.R. § 241.4(*l*)(1) (emphasis added); s*ee also Grigorian*, 2025 WL 2604573, at *8 (rejecting that a conversation with an ICE officer qualifies as an informal interview when it occurred before petitioner was served notice of revocation and before petitioner was taken into custody). Substantively, the interaction between the ICE officer and Petitioner cannot fulfill § 241.4(*l*) requirements where the purpose of the interview is to give petitioner an "opportunity to respond to the reasons for revocation stated in the notification." *See* 8 C.F.R. § 241.4(*l*)(1). Where Petitioner arrived at his ICE check-in and was only then informed of the revocation and immediately taken into custody, Petitioner had no meaningful opportunity to understand the reasons for revocation or gather information to respond accordingly. At the hearing, Petitioner's

counsel set forth a litany of documents and other information that would have been presented had Petitioner been given an opportunity to respond. Respondents have not advised that Petitioner has been given an informal interview since he was detained on November 20, 2025. *See generally* ECF Nos. [8], [11], [15]. Therefore, the Court finds Respondents did not follow the required procedures to revoke Petitioner's OSUP and re-detain him. *See Grigorian*, 2025 WL 2604573, at *6-9 (finding the government violated the informal interview requirement when petitioner was detained at an ICE check-in even when petitioner had the opportunity to speak with his family, employer, and attorney).

It is an "unremarkable proposition that an agency must abide by its own regulations." *See Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). The failure to abide by regulations does not guarantee reversal of the agency's action. *See Sharma v. Drug Enf't Agency*, 511 F. App'x 898, 902 (11th Cir. 2013). However, "[t]he opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands." *Grigorian*, 2025 WL 2604573, at *9. Respondents' failure to provide notice and an informal interview to respond to the reasons for the revocation violates ICE's own regulations and the Fifth Amendment Due Process Clause. *Grigorian*, 2025 WL 2604573, at *10; *see also Zhu v. Genalo*, 798 F. Supp. 3d 400, 414 (S.D.N.Y. 2025) ("ICE's failure to follow its own regulations and provide Petitioner with notice or an interview violated Petitioner's procedural due process rights"). Because Petitioner's OSUP was revoked and he was detained in violation of stated procedures and his Due Process rights, Petitioner's detention is unlawful. Accordingly, Petitioner shall be released. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful] detention is, of course, release.") (alteration added; citation omitted); *Ceesay*, 781 F.

12

Supp. 3d 137, 166 (W.D.N.Y. 2025) ("In sum, because ICE did not follow its own regulations in deciding to re-detain Ceesay, his due process rights were violated, and he is entitled to release.").

Because the Court finds that Petitioner must be released due to the Respondents' violation of Petitioner's due process rights for failing to provide the required informal interview, the Court need not address Petitioner's remaining claims in the Petition or address the remaining relief sought in the Emergency Motion.

## IV.   CONCLUSION

For the reasons discussed above, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner's Verified Petition for Writ of Habeas Corpus and Complaint for Injunctive Relief, **ECF No. [1]**, is **GRANTED**.

2. Respondents are **ORDERED** to release Petitioner from custody **no later than 5:00 p.m. ET on April 3, 2026**, subject to and in accordance with the conditions in his preexisting Order of Supervision dated April 10, 2006. Respondents shall return all of Petitioner's personal belongings to him upon release.

3. Respondents shall certify compliance with this Order **on or before April 6, 2026.**

4. Petitioner's Emergency Motion for Temporary Restraining Order to Enjoin Unlawful Removal and Order Immediate Release, **ECF No. [13]**, is **DENIED** as moot.

5. The Clerk shall **CLOSE** this case.

6. The Court retains jurisdiction as necessary to enforce this Order.

Case No. 25-cv-25618-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 2, 2026.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

Noticing 2241/Bivens U.S. Attorney
Email: usafls-2255@usdoj.gov

Noticing INS Attorney
Email: usafls-immigration@usdoj.gov